# Louisville Taxicab & Transfer Co. v. Warren.

June 13, 1947.

Rehearing denied December 5, 1947.

B. H. Farnsley, Judge.

Robert L. Page and Bertram C. Van Arsdale for appellant.

Robert Hubbard and Stanley Briel for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS— Reversing.

James Leon Warren, a child about seven and a half years of age at the time of his accident, suing by his next friend, recovered a judgment against the Louisville Taxicab & Transfer Company for $5218.15 for personal injuries received when he and appellant's cab collided. Appellant asks a reversal of the judgment because: (1) A verdict should have been directed in its favor; (2) the instructions are erroneous; (3) the damages are excessive. As we have reached the conclusion that the first ground is meritorious, it will be unnecessary to consider or discuss the other two.

The accident occurred about one o'clock on the afternoon of November 3, 1945, near the intersection of Taylor Boulevard and Rodman Street in Louisville. From the record it does not appear that there was a stop light at this intersection. Taylor Boulevard is 40 feet wide where it intersects with Rodman Street, and the latter is 30 feet wide. After the intersection with Rodman Street, Taylor Boulevard becomes Winkler

Avenue, which is 36 feet wide, and extends to Third Street. Algonquin Parkway runs into Winkler from the northwest and there is a grass plot or "island" on the northeast corner of the intersection of Taylor Boulevard and Rodman Street, which "island" is bounded by Algonquin Parkway on the northeast.

Appellee and two of his playmates, Edward Hood Drury, eight years of age, and Frank Steven Adkins, ten years of age, were standing on the southwest corner of the "island" at the intersection of Taylor Boulevard and Rodman Street. The races were on in Louisville at that time and as the place of the accident is not far from Churchill Downs, traffic was heavy at this particular intersection at 1 o'clock P. M., the hour of the accident. Leon ran into the street in an attempt to cross Winkler Avenue from north to south. The Drury child started after him but Frank caught that boy and he did not get out into the traffic.

Appellant's cab driven by William E. Young was proceeding east on Taylor Boulevard. It passed through the intersection with Rodman Street at a rate of about 10 miles an hour, and just as it did so, a car going in the same direction but about twice as fast, passed the cab. Leon had gotten to the middle of Winkler Avenue where he was stopped momentarily by the heavy traffic moving both east and west on that avenue. When this car going east on Winkler passed the cab, Leon darted from behind that car and struck the cab or was struck by it, which resulted in a serious break in his right arm at the elbow.

The evidence shows that the driver of the cab was looking straight ahead; that he was on his right side of Winkler Avenue about a couple of feet from the curbline driving at a speed of about 10 miles an hour, and stopped his cab after the accident within 8 or 10 feet. The testimony is conflicting as to whether or not the passing cars prevented the driver from seeing the child in the middle of the street, and as to whether or not the cab struck the boy, knocked him down and ran over his right arm, or whether he ran into the side of the cab. However, the only marks on the cab showing its contact with the child was that the dirt was "brushed off" its left rear fender.

The negligence relied upon by appellee is that the driver of the cab by keeping the proper lookout could have seen the child in time to have prevented the accident and that he is entitled to have his case submitted to the jury under the last clear chance doctrine.

Had the driver seen this child in the middle of the street, there was nothing he could have done to have prevented the accident. He was traveling at a speed of 10 miles an hour and had his car under such control that he stopped it after the accident within 8 or 10 feet. The driver could not have anticipated that this boy would suddenly dart from behind a passing car into the path of the cab. If the driver had seen the boy in the street and had stopped his cab, that would not have averted the accident, as the child would have run into the cab when he darted from behind the passing car. The fact of whether the cab was standing or moving played no part in the causation of the accident. Usually, proximate cause is a question for the jury, but where it cannot be inferred that defendant's negligence has any causal connection with the accident, there is no evidence of proximate cause upon which a verdict may rest and a peremptory instruction should be given for the defendant. Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. 2d 727.

It is true we wrote in Dixon v. Stringer, 277 Ky. 347, 126 S. W. 2d 448, 452, and in Lehman v. Patterson, 298 Ky. 360, 182 S. W. 2d 897, that a driver who looks straight ahead in utter disregard of pedestrians on the street, or crossing it, will not be exonerated from liability by the "sudden appearance" of a pedestrian, since any appearance is sudden to such a motorist. But the facts in those cases distinguish them from the instant one. Mrs. Lehman had a clear, unobstructed view of the child walking along the curb-line 30 or 35 feet ahead of her. The Dixon child walked or ran from 20 to 34 feet in full view of Mrs. Vaughn, the driver of the car in that case. No car was passing either the Lehman or the Vaughn cars as was passing the cab in the instant case, and there was nothing that prevented the drivers of those cars from seeing the child each struck in time to have averted the accident had they been observing the proper lookout.

Likewise, the case at bar is clearly distinguishable from the other cases relied upon by appellee. In Kelly v. Marshall's Adm'r, 274 Ky. 666, 120 S. W. 2d 142, there was a conflict in the evidence as to whether or not the driver of the taxicab was negligent as to his speed and as to giving notice of his approach. In Kentucky Virginia Stages v. Tackett's Adm'r, 294 Ky. 189, 171 S. W. 2d 4, a passenger on the bus testified that he saw the child running in the direction of the intersection of her path with that of the bus 150 feet away from the place she was struck. In Heskamp v. Bradshaw's Adm'r, 294 Ky. 618, 172 S. W. 2d 447, the pedestrian traveled 32 feet in attempting to cross the street in the unobstructed view of the motorist and there was evidence that the car was traveling at a speed of between 30 or 35 miles an hour, hence we held that from these facts the jury might reasonably infer the driver did not have his car under reasonable control and that he failed to keep the proper lookout.

In the instant case whether or not the driver by exercising the proper lookout could have seen the child standing in the middle of the street, had no causal connection with the unfortunate accident, since there was nothing the driver could have done to have averted the accident when the child darted from behind the passing car into the path of the cab.

For the reasons given the judgment is reversed with directions that should the evidence be the same on another trial, the court will direct the verdict in favor of appellant. All other questions are reserved.