Michael **FREDERICK**, by and through His Next Friend, John Frederick, Appellant,

v.

Audrey **HALL**, Appellee.

Court of Appeals of Kentucky.

Feb. 7, 1964.

Frank G. Gilliam, Lexington, Robert L. Milby, London, for appellant.

G. L. Tucker, Cynthiana, Milton M. Bloom, Cincinnati, Ohio, for appellee.

DAVIS, Commissioner.

Between 5:30 and 6:00 p. m. on February 9, 1959, Michael Frederick, a child 2½ years old, was struck by the automobile of appellee, Audrey Hall, on Locust Street in Cynthiana. In a suit prosecuted by Michael, through his father as next friend, a directed verdict denying recovery was rendered. This appeal seeks to reverse the adverse judgment entered pursuant to that directed verdict, asserting: (1) the facts warrant submission of the issues to a jury, and (2) new trial should have been granted pursuant to CR 63.

There was no stenographic report of the evidence at the trial, hence we have no detailed record of the evidence. Appellant submitted a narrative statement of the evidence as prescribed in CR 75.13. Appellee filed no specific objection to the narrative submitted by appellant, but countered with a narrative of her own, which differs in some material respects from the statement submitted by appellant.

The presiding judge at the jury trial was the late Honorable A. H. Barker. Judge Barker sustained the motion for directed verdict at the conclusion of all the evidence. Appropriate motion for new trial was timely filed and pending before Judge Barker when he died. Honorable John P. Lair succeeded Judge Barker as presiding judge of the Harrison Circuit Court, in which the action was pending. Appellant filed a second motion for new trial before Judge Lair, asserting entitlement to new trial because of the death of Judge Barker. See CR 63. The motions for new trial were overruled after careful consideration by Judge Lair.

Locust Street in Cynthiana runs in a north-south direction, and is available for two-way traffic. Little Michael had accompanied his mother in her visit to the home of a relative situated at 106 Locust Street. The boy's father came to the area in a snub-nosed "potato chip" truck; parked it on the east side of the street at a point opposite 106 Locust, and sounded his horn to alert his wife that he had arrived for the purpose of driving her and the child home. Mrs. Frederick found it necessary to let go of Michael's hand in order to close the door of the residence at 106 Locust. Thereupon Michael proceeded to "run" or "trot" toward his father as the father remained in the truck across Locust Street. Before Michael reached his father's truck he was struck by the passenger car operated northwardly on Locust Street by Mrs. Audrey Hall, appellee.

Locust Street's paved surface is 26.8 feet in width at the point of the accident. The point of the impact was eighteen feet from the west curb of Locust Street, and about 184 feet north of Pike Street (which intersects Locust at right angles). It was "getting dark," but was not quite dark. There had been some rain, and the street was wet in spots, but it was not raining at the moment of the unfortunate incident.

Appellee testified that she did not see Michael until he was just two or three feet from her. She said that Michael emerged suddenly from the rear of a car parked on the west side of Locust Street, approximately opposite the site of the father's truck. Appellee testified that she was traveling at twenty miles per hour just before the collision, and that as soon as she saw the child she applied her brakes and stopped within two car lengths. Other evidence (as contained in the narrative statements) is to the effect that appellee's car traveled 125 feet beyond the point of impact.

The record reflects that a pavement led from 106 Locust to the curb, and that the father's truck was parked nearly opposite that pavement. There is a critical conflict in the evidence as to whether there were one or two vehicles parked on the west side of Locust Street. Also, there is contrariety of evidence (as gleaned from the narratives) as to whether there was any vehicle located at a point south of the walk leading from 106 Locust to the curb. In this state of the record we hold that there was sufficient evidence to present a jury question as to whether Michael came from behind a vehicle into the path of appellee's car. This view, of course, contemplates the existence of these discrepancies in evidence upon a new trial.

In reaching this conclusion we start with the premise that Michael Frederick, aged 2½, is incapable of contributory negligence. See Ward v. Music, Ky., 257 S.W.2d 516, and Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897.

We are buttressed with the principle that motorists are charged with taking into account the known proclivities of small children, and that among those proclivities is the disposition to run or dart into a street. Cf. Roselle v. Bingham, 242 Ky. 496, 46 S.W.2d 784, and Lehman v. Patterson, supra.

To reach the point in Locust Street where he was struck, Michael traversed eighteen feet of the traveled portion of that street. *If* the southernmost car parked on the west side of Locust was indeed *north* of the walk leading from 106 Locust, there was nothing to prevent appellee's clear vision of him during all of that eighteen feet of travel. In Bright v. McAllister, 310 Ky. 512, 221 S.W.2d 67, we recognized the physical fact that such a small child could never attain a running speed in excess of five miles per hour. Some of the narrative evidence in the record admits of 25 mph as a possible speed for appellee. If we construe the evidence most favorably to the plaintiff,[1] we are constrained to the view that the case is one for the jury. See these cases: Bright v. McAllister, supra; Roselle v. Bingham, supra; Lehman v. Patterson, supra; Davis' Adm'x v. Gordon, 309 Ky. 121, 216 S.W.2d 409; United Fuel Gas Co. v. Friend's Adm'x, Ky., 270 S.W.2d 946; Kiser v. Justice, Ky., 336 S.W.2d 32; Baker v. Sizemore, Ky., 338 S.W.2d 386; and University of Ky. v. Guynn, Ky., 372 S.W.2d 414.

This conclusion is reached because the evidence warrants a jury to believe that appellee could have seen Michael engaged upon his childish dash to reach his father in ample time to avoid striking him. Her own testimony that she saw the child when he was two or three feet from her warrants a jury's belief that she was not maintaining that degree of lookout required of an ordinarily prudent person under similar circumstances.

We have considered the cases cited by appellee, and find them distinguishable on their facts from the case at bar. It would extend this opinion beyond reasonable limits to undertake a detailed analysis of each case. It suffices to observe that we feel that the case before us is not controlled, on the facts, by: Louisville Taxicab and Transfer Co. v. Warren, 305 Ky. 861, 205 S.W.2d

---

1. As we must on the motion for directed verdict. Cf. Combs v. Peoples Bank, 313 Ky. 120, 230 S.W.2d 475.

695; Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S.W.2d 879; Lambert v. Miller's Adm'r, 277 Ky. 64, 125 S.W.2d 1019; and Davis v. Bennett's Adm'r, 289 Ky. 516, 159 S.W.2d 39.

What we have written makes it unnecessary to decide whether a reversal could have been granted pursuant to CR 63.

The judgment is reversed with directions to grant a new trial to the appellant and for proceedings consistent with this opinion.